LAW OFFICES
**MORGAN, LEWIS & BOCKIUS LLP**
101 PARK AVENUE
NEW YORK, NEW YORK  10178
(212) 309-6000
ATTORNEYS FOR DEFENDANTS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DAN LAMPROPOULOS,

                              Plaintiff,

          -against-

METROPOLITAN LIFE INSURANCE COMPANY
AND JOHN BUCSEK,

                              Defendants.

Civil Action No.

06-CV-2832 (NRB)

### <u>NOTICE OF REMOVAL</u>

Defendants Metropolitan Life Insurance Company ("MetLife") and John Bucsek
(collectively "Defendants"), by their attorneys, Morgan, Lewis & Bockius LLP, hereby remove
this action from the Supreme Court of the State of New York, County of New York, where it is
pending, to the United States District Court for the Southern District of New York.  In support of
this Notice of Removal, Defendants state as follows:

1.  On June 9, 2005, Plaintiff, Dan Lampropoulos, commenced an action
    against Defendants, entitled <u>Lampropoulos v. Metropolitan Life Insurance</u>
    <u>Company and John Bucsek.</u>, Index No. 05-108003, in the Supreme Court
    of the State of New York, County of New York.

2.  On February 23, 2006, Plaintiff filed a motion to Amend the Complaint to
    add a cause of action under the Federal Family and Medical Leave Act, 29
    U.S.C. §§ 2601 <u>et</u> <u>seq</u>.

1-NY/2020240.1

3.　　On March 23, 2006, Plaintiff's Motion to Amend the Complaint was granted by the Supreme Court for the State of New York, County of New York and the Complaint was deemed served on Defendants by Order of the Court.  See March 23, 2006 Order of the Court attached hereto as Exhibit A.

4.　　The Amended Complaint deemed served on Defendants is attached hereto as Exhibit B.

5.　　This action is properly removed to this Court by Notice of Removal because the Court has federal question jurisdiction under the Fourth and Fourteenth Amendments to the Constitution, pursuant to 28 U.S.C. § 1331.  As set forth in 28 U.S.C. §1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Furthermore, this Court has supplemental jurisdiction over the state court claims pleaded against defendants pursuant to 28 U.S.C. § 1367(a) in that they all are related to, or arise out of, the facts of the claims over which the Court has original federal question jurisdiction as set forth above.

6.　　This Notice of Removal has been filed within thirty (30) days of service and has therefore been timely filed pursuant to 28 U.S.C. §1446.

7.　　A copy of this Notice of Removal has been served upon Plaintiff by mail, and a copy of the Notice of Removal is being filed with the Clerk of the

1-NY/2020240.1

Supreme Court for the State of New York, County of New York, pursuant

to 28 U.S.C. § 1446.

For the foregoing reasons, Defendants respectfully request that the above-

captioned action pending against it in the Supreme Court of the State of New York, New York

County, be removed therefrom to this Court for further proceedings.

Dated: New York, New York
     April 11, 2006

                    Respectfully submitted,

                    MORGAN, LEWIS & BOCKIUS LLP

                    By: _____
                        Christopher A. Parlo (CP-4310)
                        Maral N. Kazanjian (MK-0906)

                    101 Park Avenue
                    New York, New York 10178
                    (212) 309-6000
                    Attorneys for Defendants

TO:    Alan Bennett, Esq.
       Attorney for Plaintiff
       Bennett & Moy, LLP
       575 Lexington Avenue, 23rd Floor
       New York, New York 10022

3

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by regular mail a true and correct copy of the Notice of Removal, on this 11th day of April, 2006, on:

Alan Bennett, Esq.
Attorney for Plaintiff
Bennett & Moy, LLP
575 Lexington Avenue, 23rd Floor
New York, New York 10022

I affirm that the foregoing statements are true, under penalty of perjury.

MARAL N. KAZANJIAN

4

**EXHIBIT A**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Dan Lampropoulos

v.

Metropolitan Life Ins. Co.
& John Bucsek

INDIVIDUAL ASSIGNMENT PART 54

~~STIPULATION~~ ORDER

INDEX NO. 108003/05

MOTION CALENDAR NO.

DATE 3/23/06

so ordered

IT IS HEREBY ~~STIPULATED AND AGREED by and between the below-named attorney(s)~~ as follows:

1) π to appear for EBT, as noticed, or either:
4/11/06 at 10am; 4/21/06 at 10am; 4/26/06 at 10am

2) Δs to provide responses to π's disc. demands dated
9/20/05 (reinstated 1/10/06) by 4/21/06. Any objections to be made by 4/7/06.

3) EBT of Δs to be held on either : 5/23, 5/24
or 6/4/06 at 10am

4) π to file the NOI by 7/7/06.

5) Any dispositive motions must be made w/in 45 days
after π files NOI.

6) Contact Part 54: 646-386-3362 to schedule a
conference /advance a conference date.

7) Cont: 5/11/06 @ 9:30 am

_____
Attorney for Plaintiff
Alan Serrett - Bennett Op
May, LLP

Date: 3/23/06

Maral Kazanjian
Saro Gordon
for Met Life Insurance Co. and Bucsek
Attorney for Defendant

So Ordered.

_____
Attorney for Defendant

SHIRLEY WERNER KORNREICH
J.S.C.

ENTER: _____
J.S.C.

SC-8G (rev 2/86)

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

INDIVIDUAL ASSIGNMENT PART 54

Dan Lampropoulos

v.

Metropolitan Life Ins. Co.
& John Bucsek

~~STIPULATION~~ ORDER

INDEX NO. 108003/05

MOTION CALENDAR NO.

DATE 3/23/06

Ordered

IT IS HEREBY ~~STIPULATED AND AGREED by and between the below named attorney(s)~~ as follows:

1) π to appear for EBT, as noticed, or either: 4/11/06 at 10am; 4/21/06 at 10am; 4/26/06 at 10am

2) Δs to provide responses to π's disc. demands dated 9/20/05 (reinstated 1/10/06) by 4/21/06. Any objections to be made by 4/7/06.

3) EBT of Δs to be held on either 4/11/06, 5/24/06 or 6/9/06 at 10am

4) π to file the NOI by 7/7/06.

5) Any dispositive motions must be made w/in 45 days after π files NOI

6) Contact part 54: 646-386-3362 to schedule a conference/advance a conference date

7) Cont: 5/11/06 @ 9:30 am

_____
Attorney for Plaintiff

Date: 3/23/06

Maral Kazanjian
Fred Gordon
_____
Attorney for Defendant
Met Life Insurance Co. and Bucsek

So Ordered.

SHIRLEY WERNER KORNREICH
J.S.C.

_____
Attorney for Defendant

ENTER: _____
J.S.C.

SC-8G (rev 2/86)

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: *Kornreich*                                     PART 54

Index Number : 108003/2005

LAMPROPOULOS, DAN

vs

METROPOLITAN LIFE INSURANCE

Sequence Number : 001

COMPEL DISCLOSURE

INDEX NO. *108003/05*

MOTION DATE *3/23/06*

MOTION SEQ. NO. *1*

MOTION CAL. NO. _____

The following papers, numbered 1 to *5* were read on this motion to/for *Compel Discovery*

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | *1-3* |
| Answering Affidavits — Exhibits _____ | *4* |
| Replying Affidavits _____ | *5* |

Cross-Motion:  ☒ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion *plaintiff defendants may videotape the plaintiff's EBT after they have turned over all required discovery; and it is further ORDERED that plaintiff may amend his complaint and the amended complaint shall be deemed served and filed; and it is further ORDERED that defendant shall answer the amended complaint within 20 days; and it is further ORDERED that ...*

**MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):**

Dated: *3/23/06*                                    J.S.C. *3/23/06*

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE

SHIRLEY WERNER KORNREICH
J.S.C.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

DAN LAMPROPOULOS,

Index #:  108003/05

Plaintiff,

**VERIFIED AMENDED**
**COMPLAINT**

-against-

METROPOLITAN LIFE INSURANCE COMPANY
and JOHN BUCSEK,

Defendants.
-------------------------------------------------------------------x

Plaintiff DAN LAMPROPOULOS (hereinafter "Dan"), by his counsel,

BENNETT & MOY, LLP, as and for an Amended Verified Complaint against defendants

METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "MetLife") and JOHN

BUCSEK (hereinafter "Bucsek"), respectfully alleges as follows:

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

1. At all relevant times herein, and at the present time, Dan has resided and continues to
reside in the County of Queens, in the State of New York.

2. At all relevant times herein, and at the present time, MetLife is a domestic corporation
duly organized and existing under the laws of the State of New York, is authorized to
transact business within the State of New York, maintains its principal place of
business and transacts business within the County and State of New York, and as
such, it is subject to jurisdiction of the Courts of the State of New York.

3. At all relevant times herein, and at the present time, MetLife is a foreign corporation
authorized to transact business within the State of New York, maintains its principal
place of business and transacts business within the County and State of New York,
and as such, it is subject to jurisdiction of the Courts of the State of New York.

4. At all relevant times herein, and at the present time, MetLife was and is a partnership
duly organized and existing pursuant to the laws of the State of New York, maintains
its principal place of business within the County and State of New York, transacts
business within the State of New York, and as such, it is subject to the jurisdiction of
this Honorable Court.

5.  At all relevant times herein, and at the present time, MetLife is an association authorized to transact business within the State of New York, maintains its principal place of business and transacts business within the County and State of New York, and as such, it is subject to jurisdiction of the Courts of the State of New York.

6.  At all relevant times herein, and at the present time, MetLife was and is in the business of selling insurance and financial products and services.

7.  At all relevant times herein, and at the present time, MetLife employs and continues to employ, employees to sell its insurance and financial products and services.

8.  At all relevant times herein, and at the present time, MetLife maintained and maintains various offices throughout the world, including within the City and State of New York, to sell its insurance and financial products and services.

9.  At all relevant times herein, and at the present time, MetLife maintained and maintains an office located at 355 Lexington Avenue, 15th Floor, New York, New York (hereinafter the "Strategic Planning Group"), to sell its insurance and financial products and services.

10. At all relevant times herein, and at the present time, MetLife assigned and assigns its employees to its various offices throughout the world, including within the City and State of New York, to sell its insurance and financial products and services.

11. At all relevant times herein, and at the present time, MetLife assigned and assigns its employees to the Strategic Planning Group to sell its insurance and financial products and services.

12. At all relevant times herein, and at the present time, MetLife exercises supervision, authority and control over its employees and the operations at each of its offices, including but not limited to, the hiring, duties, terms and conditions, compensation, evaluation, discharge, responsibilities and continued employment of its employees.

13. At all relevant times herein, and at the present time, John Buscek was and is an employee of MetLife.

14. At all relevant times herein, and at the present time, MetLife assigned and continues to assign Bucsek, to the Strategic Planning Group.

15. At all relevant times herein, and at the present time, MetLife assigned and continues to assign to Bucsek, the title of General Manager of the Strategic Planning Group.

16. At all relevant times herein, the duties and responsibilities of Bucsek included, but was not limited to, the supervision, direction, authority and control over the operations of and MetLife's employees at, the Strategic Planning Group, in its selling

of insurance and financial products and services, including but not limited to, the
hiring, duties, terms and conditions, compensation, evaluation, discharge,
responsibilities and continued employment of its employees.

17. At all relevant times herein, all the actions, conduct and behavior alleged herein of
    each defendant, its agents, servants and/or employees were performed within the
    scope of their duties and responsibilities, and with the knowledge, ratification,
    consent and permission of the other defendant.

18. At all relevant times mentioned, the defendants were under the duty to keep the
    workplace free of, to prevent and not to engage in, unlawful acts of discrimination in
    employment, in violation of all Federal, State and City of New York laws.

19. That Dan was hired by MetLife to sell its insurance and financial products and
    services in or about 1991.

20. In or around 1999, Dan was re-assigned by MetLife from one of its offices located in
    Astoria, New York, to another MetLife office known as The Gilberg Agency and/or
    Office 38E.

21. That in or around 2000, MetLife merged The Gilberg Agency with another MetLife
    office known as Office 44J, which became the Strategic Planning Group.

22. That Bucsek became the Managing Director of the Strategic Planning Group on or
    about August 2002.

23. That Dan remained an employee of MetLife and assigned to the Strategic Planning
    Group, selling MetLife insurance and financial products and services, until his
    discharge on or about February 15, 2005.

24. That between August 2002-February 15, 2005, Bucsek was Dan's supervisor.

25. That throughout his tenure of employment with the defendants, Dan was qualified to
    perform the basic and necessary duties of his employment, and Dan's work
    performance throughout was satisfactory or better.

26. That Dan's compensation, including wages, bonuses, raises, pension and 401K
    retirement benefits, as an employee of MetLife assigned to the Strategic Planning
    Group, was based on commissions earned from Dan's sales of MetLife insurance and
    financial products and services, from both new sales of MetLife's products and
    services and residual commissions and earnings from prior sales thereof.

27. That in or about 2001, suit was commenced against MetLife on behalf of class of
    female employees of Metlife, wherein it was alleged that these female employees
    were the subject of a pervasive pattern of discrimination based on their gender with

regards to the terms and conditions of their employment with MetLife, in the United States District Court, Southern District of New York, under Index #: 01-CIV-2112 (hereinafter the "Class Action").

28. That MetLife appeared in the Class Action, and was represented therein by the law firm of Proskauer Rose, LLP.

29. That at all times hereinafter mentioned, Patty Lampropoulos (hereinafter "Patty") was an employee of Metlife.

30. That at all times hereinafter mentioned, Patty Lampropoulos was and is the legal spouse of Dan.

31. That while an employee of MetLife, Patty became and was a member of the class in the Class Action.

32. That while an employee of MetLife, Patty cooperated with plaintiffs' counsel in the prosecution of the Class Action against MetLife, including but not limited to, providing sworn deposition testimony therein, on December 2002.

33. That counsel for MetLife was present and participated in the deposition of Patty.

34. That the testimony provided by Patty was and is adverse to the interests and defenses of MetLife in the Class Action.

35. That between October 2002-December 2002, while an employee of MetLife, Dan cooperated with plaintiffs' counsel in the prosecution of the Class Action against MetLife, including but not limited to, providing a sworn Declaration on or about October 29, 2002, and being prepared to provide sworn deposition testimony on scheduled dates.

36. That the sworn Declaration provided, and the testimony Dan was to provide during his deposition, was and is adverse to the interests and defenses of MetLife in the Class Action.

37. That the defendants, its counsel, officers, directors, agents, servants and employees, were fully aware and apprised as to the sum and substance of Patty's deposition testimony and Dan's Sworn Declaration and expected deposition testimony.

38. That as a proximate result of the aforesaid cooperation with plaintiffs' counsel in the Class Action, MetLife was caused to settle the Class Action.

39. That between December 2002-February 15, 2005, and as a result of the aforesaid cooperation with plaintiffs' counsel in providing information and sworn testimony adverse to the interests and defenses of MetLife in the Class Action, Dan became and

was subject to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional harassment, intimidation and adverse treatment with regards to the terms and conditions of his employment with MetLife, by Bucsek and MetLife, their agents, servants and employees, that other similarly-situated MetLife employees who did not cooperate with plaintiffs' counsel in the Class Action were not subject to, including but not limited to, the following:

    -the sudden imposition upon Dan of a requirement to validate business and to adhere to a dress code;

    -being subject to constant threats of termination for alleged poor work performance;

    -being subject to threats of physical violence;

    -having Dan's compensation, continued employment and future earning capacity severely reduced and to be placed in jeopardy by transferring and diverting existing clients, business and policies from Dan to other employees of the Strategic Planning Group, improperly providing information and/or providing misinformation about Dan and his employment status to existing and prospective clients of Dan, precluding Dan from participating in leads and other business opportunities provided to other similarly-situated employees of MetLife and in the Strategic Planning Group, and diverting potential leads and business opportunities away from Dan;

    -arbitrarily and without justification increasing Dan's share of the monthly overhead expenses for the Strategic Planning Group;

    -wrongfully accusing, tarnishing, reporting and causing to be filed against Dan with MetLife and NASD, improper business, disclosure, compliance and company practices and issues;

    -refusing Dan's repeated attempts to transfer to another MetLife office;

    -purposely delaying the approval of policies and business provided by Dan;

    -withholding, and/or the improper providing of, MetLife and/or office support services, including the withholding of mail, memos and notices, the providing of broken office equipment;

    -interfering with Dan's business relationships with his clients.

40. That prior to the aforesaid cooperation with plaintiffs' counsel against MetLife in the Class Action, Dan was not subject to such adverse, hostile and unwanted employment practices and treatment.

41. That Dan repeatedly reported and complained of aforesaid retaliatory unwanted adverse treatment to the defendants, their agents, servants and employees, including their Human Resources Department, in an attempt for an investigation to be undertaken, remedial measures to be implemented, and for such treatment to end.

42. That notwithstanding Dan's reporting thereof, a reasonable investigation was not undertaken, remedial measures were not implemented, and the aforesaid retaliatory

unwanted adverse treatment never abated or decreased.

43. That on or about December 19, 2004, Dan sustained an injury, which with his pre-existing medical condition, constituted a serious health condition.

44. That as a result of this serious health condition, Dan requested and applied for a medical disability leave of absence from employment with the defendants.

45. That Dan provided MetLife with all necessary and requested documentation and information to support his request for a medical leave of absence from employment.

46. That at all relevant times herein, Dan represented to the defendants, their agents, servants and employees, that this medical leave was to be temporary; that he would return upon conclusion of his medical leave to his position, and that he thereafter would be able to fulfill the basic and essential duties and responsibilities of his position.

47. That the defendants, their agents, servants and employees, in or around the end of December 2004, acknowledged that Dan had a disability, and granted Dan a temporary medical leave of absence.

48. That throughout his medical disability leave of absence, Dan regularly kept in contact with the defendants, their agents, servants and employees, providing requested information concerning his medical status.

49. That notwithstanding the foregoing, Dan became and was subject to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional harassment, retaliation, intimidation and adverse treatment with regards to the terms and conditions of his employment with MetLife, by the defendants, their agents, servants and employees, that other similarly-situated MetLife employees who did not seek and were granted a medical disability leave of absence were not subject to, which went unabated despite complaints, including but not limited to, the following:

        -constantly being ridiculed, degraded and accused of not having a serious health condition;
        -constantly being threatened with termination should Dan not immediately end his medical leave and return to work;
        -re-assigning, diverting and transferring Dan's existing clients, policies and other business opportunities to other MetLife employees;
        -improperly providing information and/or providing misinformation about Dan, his medical and employment status, to existing and prospective clients of Dan;
        -interfering and/or removing Dan's access and ability to retrieve client messages and information from the office and his telephone voice mail;
        -improperly accessing, copying and removing Dan's personal and

computer files;

50. That Dan was terminated from employment with MetLife on as of February 15, 2005, while Dan was still out from employment with MetLife on approved medical disability leave.

51. That the purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY FOR RETALIATORY DISCRIMINATION IN VIOLATION OF EXECUTIVE LAW SECTION 296(1)(e)

52. Plaintiff repeats and realleges each and every allegation set forth in paragraph #'s "1"- "51" set forth hereinabove, as if fully set forth herein.

53. MetLife was an employer of Dan as is defined and contemplated by the Executive Law of the State of New York.

54. Dan is an employee of MetLife as is defined and contemplated by the Executive Law of the State of New York.

55. That an employee providing testimony or otherwise assisting in any proceeding pursuant to the antidiscrimination provisions of the Executive Law of the State of New York is defined as a protected class.

56. That as member of the aforesaid protected class, it is unlawful for an employer to retaliate, discharge or otherwise discriminate against such an employee with regards to the terms and conditions of his employment.

57. That Dan, by virtue of Patty and his actions, conduct and behavior in cooperating with plaintiffs' counsel against MetLife in the Class Action, was and is a member of the aforesaid protected class.

58. That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by the defendants, their agents, servants and employees, which went uninvestigated, unremedied and unabated despite repeated reporting and complaints to the defendants, their agents, servants and employees, and that as a proximate result thereof, Dan was terminated.

59. That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

60. As a result thereof, Metlife is liable to Dan pursuant to section 297(9) of the Executive Law, for "damages and such other remedies as may be appropriate".

61. In addition to suffering significant loss of income, including but not limited to past and future commissions for new and existing business, bonuses, raises, and employee benefits including but not limited to medical, pension and 401K retirement benefits, Dan suffered significant financial and other out of pocket monetary expenses and losses, including but not limited to the loss of home equity, impairment of credit and the debt service on loans and drawn lines of credit, Dan was caused to suffer physical and personal injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of MetLife's outrageous conduct in violating Dan's human rights.

62. As a proximate result of MetLife's conduct, Dan has been adversely affected in his employment opportunities, his normal life's pursuits, and Dan believes that the injuries inflicted upon him as a direct result of the aforesaid has and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

63. Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact and law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT JOHN BUCSEK FOR RETALIATORY DISCRIMINATION IN VIOLATION OF EXECUTIVE LAW SECTION 296(1)(e)

64. Plaintiff repeats and realleges each and every allegation set forth in paragraph #'s "1"-"63" set forth hereinabove, as if fully set forth herein.

65. Bucsek was a supervisor of Dan as is defined and contemplated by the Executive Law of the State of New York.

66. Dan is an employee of MetLife as is defined and contemplated by the Executive Law of the State of New York.

67. That an employee providing testimony or otherwise assisting in any proceeding pursuant to the antidiscrimination provisions of the Executive Law of the State of New York is defined as a protected class.

68. That as member of the aforesaid protected class, it is unlawful for a supervisor to retaliate, discharge or otherwise discriminate against such an employee with regards to the terms and conditions of his employment.

69. That Dan, by virtue of Patty and his actions, conduct and behavior in cooperating with

plaintiffs' counsel against MetLife in the Class Action, was and is a member of the aforesaid protected class.

70. That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by Bucsek, which went uninvestigated, unremedied and unabated despite repeated reporting and complaints to the defendants, their agents, servants and employees, and that as a proximate result thereof, Dan was terminated.

71. That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

72. As a result thereof, Bucsek is liable to Dan pursuant to section 297(9) of the Executive Law, for "damages and such other remedies as may be appropriate".

73. In addition to suffering significant loss of income, including but not limited to past and future commissions for new and existing business, bonuses, raises, and employee benefits including but not limited to medical, pension and 401K retirement benefits, Dan suffered significant financial and other out of pocket monetary expenses and losses, including but not limited to the loss of home equity, impairment of credit and the debt service on loans and drawn lines of credit, Dan was caused to suffer physical and personal injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Bucsek's outrageous conduct in violating Dan's human rights.

74. As a proximate result of Bucsek's conduct, Dan has been adversely affected in his employment opportunities, his normal life's pursuits, and Dan believes that the injuries inflicted upon him as a direct result of the aforesaid has and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

75. Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact and law.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY FOR UNLAWFUL RETALIATORY DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8-107(7) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

76. Plaintiff repeats and realleges each and every allegation set forth in paragraph #'1 "1"-"75" set forth hereinabove, as if fully set forth at length herein.

77. MetLife was an employer of Dan as is defined and contemplated by the antidiscrimination provisions of the Administrative Code of the City of New York.

78. Dan is an employee of MetLife as is defined and contemplated by the antidiscrimination provisions of the Administrative Code of the City of New York.

79. That an employee providing testimony or otherwise assisting in any proceeding pursuant to the antidiscrimination provisions of the Administrative Code of the City of New York is defined as a protected class.

80. That as member of the aforesaid protected class, it is unlawful for an employer to retaliate, discharge or otherwise discriminate against such an employee with regards to the terms and conditions of his employment.

81. That Dan, by virtue of Patty and his actions, conduct and behavior in cooperating with plaintiffs' counsel against MetLife in the Class Action, was and is a member of the aforesaid protected class.

82. That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by the defendants, their agents, servants and employees, which went uninvestigated, unremedied and unabated despite repeated reporting and complaints to the defendants, their agents, servants and employees, and that as a proximate result thereof, Dan was terminated.

83. That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

84. Dan has complied with any and all conditions precedent to the commencement of the subject action in accordance with the Administrative Code of the City of New York.

85. As a result thereof, MetLife is liable to Dan pursuant to section 8-502 of the Administrative Code of the City of New York, for "damages, including punitive damages" and attorneys fees.

86. In addition to suffering significant loss of income, including but not limited to past and future commissions for new and existing business, bonuses, raises, and employee benefits including but not limited to medical, pension and 401K retirement benefits, Dan suffered significant financial and other out of pocket monetary expenses and losses, including but not limited to the loss of home equity, impairment of credit and the debt service on loans and drawn lines of credit, Dan was caused to suffer physical and personal injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of MetLife's outrageous conduct in violating Dan's human rights.

87. As a proximate result of MetLife's conduct, Dan has been adversely affected in his employment opportunities, his normal life's pursuits, and Dan believes that the injuries inflicted upon him as a direct result of the aforesaid has and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

88. Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, in addition to an award of monetary damages for punitive damages and attorneys' fees, the sum of which to be determined by the trier of fact and law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT JOHN BUSCEK FOR UNLAWFUL RETALIATORY DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8-107(7) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

89. Plaintiff repeats and realleges each and every allegation set forth in paragraph #'1 "1"-"88" set forth hereinabove, as if fully set forth at length herein.

90. Buscek was a supervisor of Dan as is defined and contemplated by the antidiscrimination provisions of the Administrative Code of the City of New York.

91. Dan is an employee of MetLife as is defined and contemplated by the antidiscrimination provisions of the Administrative Code of the City of New York.

92. That an employee providing testimony or otherwise assisting in any proceeding pursuant to the antidiscrimination provisions of the Administrative Code of the City of New York is defined as a protected class.

93. That as member of the aforesaid protected class, it is unlawful for an employer to retaliate, discharge or otherwise discriminate against such an employee with regards to the terms and conditions of his employment.

94. That Dan, by virtue of Patty and his actions, conduct and behavior in cooperating with plaintiffs' counsel against MetLife in the Class Action, was and is a member of the aforesaid protected class.

95. That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by the defendants, their agents, servants and employees, which went uninvestigated, unremedied and unabated despite repeated reporting and complaints to the defendants, their agents, servants and employees, and that as a proximate result thereof, Dan was terminated.

96. That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

97. Dan has complied with any and all conditions precedent to the commencement of the subject action in accordance with the Administrative Code of the City of New York.

98. As a result thereof, Bucsek is liable to Dan pursuant to section 8-502 of the Administrative Code of the City of New York, for "damages, including punitive damages" and attorneys fees.

99. In addition to suffering significant loss of income, including but not limited to past and future commissions for new and existing business, bonuses, raises, and employee benefits including but not limited to medical, pension and 401K retirement benefits, Dan suffered significant financial and other out of pocket monetary expenses and losses, including but not limited to the loss of home equity, impairment of credit and the debt service on loans and drawn lines of credit, Dan was caused to suffer physical and personal injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Bucsek's outrageous conduct in violating Dan's human rights.

100.   As a proximate result of MetLife's conduct, Bucsek has been adversely affected in his employment opportunities, his normal life's pursuits, and Dan believes that the injuries inflicted upon him as a direct result of the aforesaid has and will continue to have an irreparably devastating effect upon the quality of his life, and will prevent him from functioning as he did prior to the occurrences complained of herein.

101.   Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, in addition to an award of monetary damages for punitive damages and attorneys' fees, the sum of which to be determined by the trier of fact and law.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY FOR FEDERAL STATUTORY VIOLATION
(Violations of Section 107 of the Family Medical And Leave Act of 1993)

102.   Plaintiff repeats and realleges each and every allegation set forth in paragraph #'s "1"-"101" set forth hereinabove, as if fully set forth at length herein.

103.   It is a violation of the Family Medical Leave Act (hereinafter "FMLA") for an employer to discriminate with regards the terms and conditions of employment because an employee is a member of a statutorily protected class of individuals.

104.   Dan was an employee of MetLife as is defined and contemplated by the antidiscrimination provisions of the FMLA.

105.   Dan worked at least 1,250 hours during the year immediately preceding the date he went out from employment with MetLife on medical leave, as well as during the year immediately preceding the date of his termination from employment with MetLife.

106.   On or about December 19, 2004, Dan sustained an injury, which with his pre-existing medical condition, constituted a serious health condition as is defined and contemplated by the antidiscrimination provisions of the FMLA.

107.   That MetLife was and is an employer as is defined and contemplated by the antidiscrimination provisions of the FMLA.

108.   That Dan is a member of a statutorily protected class of individuals, as is defined and contemplated by the FMLA, and as such, was and is entitled to the protections afforded thereunder.

109.   That the defendants, in or around the end of December 2004, the defendants, their agents, servants and employees, acknowledged that Dan had a disability, and granted him a temporary medical leave of absence.

110.   That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by the defendants, their agents, servants and employees, and that as a proximate result thereof, Dan was terminated.

111.   That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

112.   That as a result, Dan is entitled to the recovery of his loss of wages, salary, employment benefits, other compensation and monetary loss, in addition to prevailing interest, liquidated damages in an amount equivalent to Dan's actual monetary loss, and Dan is entitled to an award of reasonable attorneys' fees, expert witness fees and the other costs of the subject action.

113.   Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact and law.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT JOHN BUCSEK FOR FEDERAL STATUTORY VIOLATION
(Violations of Section 107 of the Family Medical And Leave Act of 1993)

114.    Plaintiff repeats and realleges each and every allegation set forth in paragraph #'s "1"-"113" set forth hereinabove, as if fully set forth at length herein.

115.    It is a violation of the Family Medical Leave Act (hereinafter "FMLA") for a supervisor to discriminate with regards to the terms and conditions of employment because an employee is a member of a statutorily protected class of individuals.

116.    Dan was an employee of MetLife as is defined and contemplated by the antidiscrimination provisions of the FMLA.

117.    Dan worked at least 1,250 hours during the year immediately preceding the date he went out from employment with MetLife on medical leave, as well as during the year immediately preceding the date of his termination from employment with MetLife.

118.    On or about December 19, 2004, Dan sustained an injury, which with his pre-existing medical condition, constituted a serious health condition as is defined and contemplated by the antidiscrimination provisions of the FMLA.

119.    That MetLife was and is an employer as is defined and contemplated by the antidiscrimination provisions of the FMLA.

120.    That Dan is a member of a statutorily protected class of individuals, as is defined and contemplated by the FMLA, and as such, was and is entitled to the protections afforded thereunder.

121.    That Bucsek was and is a supervisor as is defined and contemplated by the antidiscrimination provisions of the FMLA.

122.    That the defendants, in or around the end of December 2004, the defendants, their agents, servants and employees, acknowledged that Dan had a disability, and granted him a temporary medical leave of absence.

123.    That as a result of Dan's membership in the aforesaid protected class, Dan was subjected to a severe, pervasive and encompassing on-going and continuous pattern, policy and practice of intentional retaliatory harassment, intimidation, adverse treatment with regards to the terms and conditions of his employment with MetLife, by Bucsek, and that as a proximate result thereof, Dan was terminated.

124.    That defendants' purported justification for Dan's unwanted, hostile and retaliatory treatment and termination was and is a pretext to conceal unlawful discrimination.

125.    That as a result, Dan is entitled to the recovery of his loss of wages, salary, employment benefits, other compensation and monetary loss, in addition to prevailing

interest, liquidated damages in an amount equivalent to Dan's actual monetary loss, and Dan is entitled to an award of reasonable attorneys' fees, expert witness fees and the other costs of the subject action.

126.    Dan, therefore, seeks monetary damages for this cause of action in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact and law.

WHEREFORE, plaintiff DNA LAMPROPOULOS demands judgment against

defendants METROPOLITAN LIFE INSURANCE COMPANY and JOHN BUCSEK in

accordance with the aforesaid causes of action, along with interest, fees, costs and

disbursements of the within action, as well as for such other, further and different relief as

to this Court may seem just and proper.

Dated: New York, New York
         February 13, 2006

Yours, etc.

ALAN J. BENNETT, ESQ.
BENNETT &MOY, LLP
Attorneys for Plaintiff
DAN LAMPROPOULOS
575 Lexington Avenue
23rd Floor
New York, New York 10022
(212) 696-2116

To:    MORGAN, LEWIS & BOCKIUS
       Attorneys for Defendants
       METROPOLITAN LIFE INSURANCE COMPANY
       and JOHN BUCSEK
       101 Park Avenue
       New York, New York 10178
       (212) 309-6000

STATE OF NEW YORK          )
                                        SS:
COUNTY OF NEW YORK         )


DAN LAMPROPOULOS, being duly sworn, deposes and states as follows:

That I am the plaintiff in the above-captioned matter.  I have read the foregoing

AMENDED COMPLAINT, know the contents thereof, and upon information and belief,

I believe the matters alleged therein to be true.

The basis of my knowledge is upon the records in my possession, as well as upon

my personal knowledge.

Dated:  New York, New York
        February 13, 2006



                                                    DAN LAMPROPOULOS



Sworn to this 13th day
of February 2006

NOTARY PUBLIC

Gus Michael
Notary Public, State of New York
No. 01MI6047216
Qualified in Queens County
Commission Expires 9/28/06

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                    SS:
COUNTY OF NEW YORK  )

DIANA CHOW, being duly sworn, deposes and says:

That I am not a party to this action, that I am over 18 years of age, and that I maintain an office in the County of New York, State of New York.

On **February 14, 2006 2:56 p.m.,** at
101 Park Avenue, 43rd Floor
New York, NY 10178-0600
(212) 309-6000

I served the within a **NOTICE OF CROSS-MOTION, ATTORNEY'S AFFIRMATION, AFFIDAVIT OF DAN LAMPROPOULOS AND EXHIBITS**

by delivering thereat a true copy of each to CHARLES CALVARUSO a person of suitable age and discretion.  He identified himself as the MANAGING CLERK of Morgan, Lewis & Bockius, LLP, attorneys for defendants METROPOLITAIN LIFE INSURANCE COMPANY and JOHN BUCSEK.

I further describe the person actually served as follows:

Sex:                        MALE
Skin Color:             WHITE
Hair Color:             GREY
Age (approx.):        49
Height (approx.):    5'6"


                                                          DIANA CHOW


Sworn before me this
14th day of February, 2006


NOTARY PUBLIC

ALAN BENNETT
Notary Public, State of New York
No. 02BE5087239
Qualified in Queens County
Commission Expires 10/27/1999

ALL-STATE LEGAL®
87181-BF • 87183-BL • 87183-GY • 07184-WH
800.222.0516 www.aslegal.com

*Index No.*                    *Year 20*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DAN LAMPROPOULOS,

                                                    Plaintiff,

                    - against -

METROPOLITAN LIFE INSURANCE COMPANY and JOHN BUCSEK,

                                                    Defendants.

NOTICE OF CROSS MOTION, ATTORNEY'S AFFIRMATION and AFFIDAVIT
OF DAN LAMPROPOULOS

### BENNETT & MOY, LLP
PLAINTIFF

        *Attorney(s) for*

        575 Lexington Avenue
        *Office Address & Tel. No.:*
        23ʳᵈ Floor
        New York, New York 10022
        (212) 696-2116

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:*..........................          Signature.................................................................

                                Print Signer's Name........................................................

*Service of a copy of the within*                                        *is hereby admitted.*

*Dated:*

                                .................................................................
                                *Attorney(s) for*

PLEASE TAKE NOTICE

☐   *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*                    20
ENTRY

☐   *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*                                    *one of the judges of the within named Court,*
SETTLEMENT   *at*
        *on*                        20          *, at*                    *M.*

*Dated:*

                                        *Attorney(s) for*

*To:*                                        *Office Address & Tel. No.:*